SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

| | |
|---|---|
| Christopher Litrell in his official capacity as the President of the P25R Parent Teacher Association; J.T., a minor, by and through his parent and natural guardian A.T.; R.L., a minor by and through his parent and natural guardian C.L.; S.B., a minor, by and through her parent and natural guardian, R.B.; J.M., a minor, by and through his parent and natural guardian, J.M., each on behalf of themselves and a class of those similarly situated, | Index No.: |
| Plaintiffs, | |
| -against- | **SUMMONS WITH COMPLAINT** |
| New York City Department of Education, City of New York, and Bill De Blasio, in his capacity as Mayor of the City of New York, | |
| Defendants. | |

**To: Defendant New York City Department of Education**
Tweed Courthouse
52 Chambers Street
New York, NY 10007

**To: Defendant The City Of New York**
100 Church Street
New York, NY 10007

**To: Defendant Bill de Blasio**
City Hall
New York, NY 10007

   **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiffs' attorney an answer to the Complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York). In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the Complaint. The basis of venue is CPLR § 503, which is the residence of the Plaintiffs and th.

| | |
|---|---|
| Dated: September 29, 2021<br>   Brooklyn, NY | Yours, etc.<br><br>**TURTURRO LAW, P.C.**<br>By: /s/ Natraj S. Bhushan, Esq.<br>By: /s/ Matthew J. Turturro, Esq.<br>By: /s/ Paulina Bellantonio, Esq. |

1

Natraj S. Bhushan, Esquire
Matthew J. Turturro, Esquire
Paulina Bellantonio, Esquire
1602 McDonald Ave
Brooklyn, NY 11230
Tel.: 718-384-2323
*Attorneys for Plaintiffs*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF RICHMOND**

| | |
|---|---|
| Christopher Litrell in his official capacity as the President of the P25R Parent Teacher Association; J.T., a minor, by and through his parent and natural guardian A.T.; R.L., a minor by and through his parent and natural guardian C.L.; S.B., a minor, by and through her parent and natural guardian, R.B.; J.M., a minor, by and through his parent and natural guardian, J.M..; on behalf of themselves and a class of those similarly situated, | Index No.: |
| Plaintiffs, | |
| -against- | **CLASS ACTION** <u>**COMPLAINT**</u> |
| New York City Department of Education, City of New York and Bill De Blasio, in his capacity as Mayor of the City of New York, | |
| Defendants. | |

The Plaintiffs, on behalf of themselves, and all others similarly situated, by and through their attorneys, Turturro Law, P.C. as and for their Class Action Complaint against defendants New York City Department of Education, City of New York and Bill De Blasio, in his capacity as Mayor of the City of New York (collectively, "Defendants"), allege the following:

<u>The Parties</u>

1. At all times referred to herein, Christopher Litrell ("Litrell") was and is a parent and natural guardian of a student in the P25R organization and the duly elected President of plaintiff P25R Parent Teacher Association ("PTA").

2. At all times referred to herein, A.T. ("A.T.") was and is the parent and natural guardian of plaintiff J.T., a minor affected within the class. These parties were and are individuals currently residing in City and State of New York, County of Richmond.

3. At all times referred to herein, C.L. ("C.L.") was and is the parent and natural guardian of plaintiff R.L., a minor affected within the class. These parties were and are individuals currently residing in City and State of New York, County of Richmond.

4. At all times referred to herein, R.B. ("R.B.") was and is the parent and natural of plaintiff S.B., a minor affected within the class. The parties were and are individuals currently residing in City and State of New York, County of Richmond.

5. At all times referred to herein, J.M. ("J.M.") was and is the parent and natural guardian of plaintiff J.M., a minor affected within the class. The parties were and are, individuals currently residing in City and State of New York, County of Richmond.

6. Defendant New York City Department of Education ("Department of Education") is responsible for managing the New York City's Public School system. Upon information and belief, its responsibilities include providing a cost-free and appropriate public education placement for children with disabilities. Upon information and belief, the Department of Education is the largest school district in the United States as it covers over 1.1 million students in the Five Boroughs of New York City, with an annual budget of approximately $25 billion.

7. Defendant City of New York was and is a municipal entity created and authorized under the laws of New York State.

8. Defendant Bill de Blasio was and is the Mayor of the City of New York at all relevant times. Upon information and belief, as Mayor, Mr. de Blasio has the power to appoint the city's schools chancellor and a majority of the members to the Panel for Educational Policy, which runs the city's Department of Education.

## Jurisdiction and Venue

9. This Court has subject matter jurisdiction over this action pursuant to Section 140-b of the New York Judiciary Law, which provides that the Supreme Court of New York has General Jurisdiction.

10. This Court has personal jurisdiction over Defendants pursuant to Civil Practice Law and Rules ("CPLR") § 301.

11. Venue is appropriate pursuant to Section 503 of the CPLR because that is the county of all of the Plaintiffs' residences and the premises of P.S./I.S. 25R South Richmond High School ("P25R"), which is a public school in District 75 - a special education district under the control of the Department of Education.

## Nature of Action

12. The Plaintiffs (through their respective parents and natural guardians), both individually and on behalf of all others similarly situated, bring this action to seek injunctive relief in regards to the irreparable harm and damages they will suffer and continue to suffer as a result of Defendants' Covid-19 vaccination mandate ("Mandate") as applied to their District 75[1] program at P25R, which goes in to effect on October 1, 2021 at 5:00PM[2].

---

[1] By way of brief background, District 75 is a city-wide district that serves children with a variety of disabilities. These are children that have IEP mandates, may receive 504 services, and require a level of care that can only be achieved through specialized training and certifications that go beyond that of a teacher or staff member in school districts with typically developing children. The children placed in this specialized district are those whose needs cannot be served in a special education class in a community district school setting.

[2] Upon information and belief, the Mandate will be enforced as of October 4, 2021, but goes into effect at the conclusion of Friday, October 1, 2021. *See*, https://abc7ny.com/vaccine-mandate-nyc-teachers-new-york-public-schools/11051781/ (last visited September 29, 2021)

13. Specifically, the minor Plaintiffs seek to have this court declare and adjudge that, the Defendants should be enjoined from taking any action which adversely impairs the Department of Education's ability to fulfill the Individual Educational Plans ("IEP") [3] which concern the minor Plaintiffs and those similarly situated. In this regard, it should be noted that the United States Supreme Court has stated that an IEP is the "centerpiece of the statute's education delivery system for disabled children." *See, Honig v. Doe*, 484 U.S. 305 (1988).

14. It is no secret that Defendants will *replace all teachers and staff that are not vaccinated by the start of the school day on October 4, 2021 regardless of the suitability of the substitute teachers and staff*. Nevertheless, Plaintiffs are special needs children with carefully crafted IEPs and, cannot be instructed and cared for by unqualified substitutes. Accordingly, *Defendants should be temporarily enjoined from placing any of their P25R teachers and staff that are not in compliance with the Mandate on leave without first ensuring that there are sufficiently trained, licensed and IEP-compliant teachers and staff that are ready, willing, and able to substitute into their place to instruct the Plaintiffs on October 4, 2021.*

15. Upon reliable information and belief, the substitute teachers and staff being sent to Plaintiffs school to replace Plaintiffs' unvaccinated teachers and staff only have an "Emergency Covid-19 certification" as opposed to Plaintiffs' current set of teachers and staff who are duly

---

[3] An IEP is a plan or program developed to ensure that a child who has a disability identified under the law and is attending an elementary or secondary educational institution receives specialized instruction and related services. The Individuals with Disabilities in Education Act (IDEA) defines an IEP as "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section."

qualified special education professionals that underwent extensive training and certification processes. *Doing so would be in material breach of the Plaintiffs IEPs along with those similarly-situated, special needs children that will cause irreparable and potentially irreversible harm to these children.*

16. To be clear, *Plaintiffs take no umbrage on the mandate itself, or the Defendants' authority to implement such measures on their employees and contractors. The Plaintiffs sole complaint in this action is to ensure that their carefully crafted IEPs (which are, in fact, legally binding documents) are not disrupted. They simply cannot afford to have their carefully planned education and therapies disrupted – even for a temporary basis.*

16. For the foregoing reasons, Plaintiffs bring this lawsuit to ensure that come October 4, 2021 and for the remainder of their school year, they (as well as a class of children who attend District 75 programs with IEPs in the City of New York) will not have their unvaccinated, highly qualified teachers and staff replaced by vaccinated, yet unqualified substitute teachers and staff.

## Statement of Facts

### i. District 75 Programs Within The Department of Education

18. District 75 is a city-wide district in the Department of Education that serves children with disabilities – both developmental and physical in nature. The children who attend District 75 sites require a level of care and instruction that cannot be provided by a local community district. These children have IEPs, which are crafted and agreed to between parents and staff on an annual basis and that meticulously, track the progress, development and needs of each individual child.

19. P.S./I.S. 25R South Richmond High School operates a District 75 program located in Richmond County, which services children from pre-kindergarten through the age of 21 years

old within Richmond County. This program serves these children with IEP-compliant curricular instruction that is appropriate for their age and abilities as well as with related services comprising of a combination of occupation, physical and speech therapies, and counseling services, as applicable, to each individual child's needs.

20. The diagnoses for children in this program (including Plaintiffs) consists of the entire range of the Autism Spectrum, Cerebral Palsy, and/or other various pediatric developmental disorders. The diagnoses also include children that have physical disabilities, such as epileptic disorders and other disorders that may leave children wheelchair bound, or requiring the administering of medication or medical intervention throughout the school day.

21. District 75 programs typically have Class Staffing Ratios, wherein children are referred to a specific class ratio when evaluated for their annual IEP. The most common class ratios include 6:1:1, 8:1:1 and 12:1:1. These class ratios require, at minimum, one full time special education teacher and one full time paraprofessional per classroom. In most cases, there are children in the room which require one to one paraprofessional assistance, thereby, increasing the amount of adult trained supervision in a classroom at any given time.

22. Furthermore, an integral part of these programs is the presence of school safety agents who are present on location at these school sites. Upon information and belief, all such programs must have at minimum one school safety agent on the premises at all times to ensure that no unauthorized persons enter the building, and that the children do not leave the school building unsupervised throughout the school day. This is because, due to their disabilities, many special needs children do not have typical safety sense and can at times run out of the school building. Therefore, the lack of a school safety agent presents inherent threat to a special needs child's physical safety because of their disabilities.

*ii. Plaintiffs' Individual Allegations as Part of the Class*

23. As noted above, all of the Plaintiffs are children, who, along with their parents/natural guardians, reside in Richmond County and are currently enrolled in a District 75 program at P.S./I.S. 25R.

24. Specifically, Plaintiff J.T. is a non-verbal speech delayed, seven-year old who has been diagnosed with a high-functioning form of Autism. His mother, A.T., quit her full-time job in 2015 to become a full-time caretaker for J.T. J.T. suffers from social delays and lack of eye contact, and has significant sensory issues. J.T. has been enrolled in P25R since the 2018/2019 school year. J.T. was supplied with an Augmentative Speaking Device in early 2018 by his instructors, suitable for alternative means of communication by way of a touchscreen/speaker tablet computer. His current teachers require special training to handle children with these types of devices. J.T. also has speech, occupational and physical therapy mandates in his IEP. A.T. is emotionally disturbed by the possibility of having her son's teacher and therapists put on leave and replaced with strangers who are not trained to address the needs of J.T. A.T. fears that any changes to J.T.'s daily routine is going to severely hinder his progress and lead to further regression in his development during these critical years.

25. Plaintiff R.L. is a ten-year old who was diagnosed with Autism at two and a half years old. R.L. has been attending P25R since kindergarten and is currently in the fifth grade. R.L. has a one-to-one paraprofessional and receives occupational, speech and physical therapies, as well as counseling, as part of his IEP mandate. R.L. thrives in a routine oriented and structured environment, and his parents are fearful that the disruption caused by potential changes in staffing will cause him to regress. They are especially worried since this is his last

year at the current school site before he has to transition to a different school next year with older children.

26. Plaintiff S.B. is a speech delayed eight year old. S.B. was diagnosed with right hemiplegic cerebral palsy when she was one year old. S.B. began going to P25R in the 2018/2019 school year when she started kindergarten. She has a one-to-one paraprofessional and an Augmentative Speaking Device. S.B. has made significant progress in P25R and has gone from being a completely non-verbal child to a child whose speech is emerging and progressing every day. She has also made significant progress with her physical limitations that cause an irregular gait and overall weakness on the right side of her body. This progress can be attributed to her physical therapy services. Her parents are incredibly anxious that this progress will be lost were she to lose her teacher, her paraprofessional and/or her therapists who have all worked very hard together in order to help her come this far.

27. Plaintiff J.M. is a nine year old boy who is cared for by his single mother. J.M. works full-time to support her son. J.M. was diagnosed with Autism at two years old. He has been attending P25R since kindergarten and is currently in the fourth grade. J.M. receives speech, physical and occupational therapies as well as counseling services. J.M. loves going to school and is very comfortable in the nurturing environment that has been created for him by the teachers and staff. He has thrived in the regimented environment and his mother is concerned that any disruption in his routine will cause him to regress.

28. All of the minor Plaintiffs named herein sue through their parents and natural guardians, individually, and as part of a class that includes all children ages 3 through 21 (through their parents and/or guardians) who are currently enrolled in a District 75 program for the 2021/2022 school year in a location where Defendants intend on removing and replacing

their current duly qualified teachers and staff who are not vaccinated with unduly qualified substitute teachers and staff.

    a.    The claims of the Plaintiffs are common to all members of each class; and,

    b.    The members of each class are too numerous to be joined as plaintiffs in this action.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Injunctive Relief)**

29. Plaintiffs repeat and re-allege paragraphs 1 through 28 as if fully repeated and set forth at length herein.

30. As outlined in the Facts section of this Complaint, if this Court does not enjoin Defendants from enforcing the Mandate, then Plaintiff's teachers/staff (and similarly situated children with disabilities in a District 75 program) who do not comply with the Mandate for receiving at least one dose of the Covid-19 vaccination will be replaced by unqualified substitute teachers in breach of their IEPs.

31. Upon information and belief, roughly 40% of the teachers and staff (PT, OT, administration, school safety personnel, counselors, nurse, etc.) at Plaintiffs' school will be replaced come October 4, 2021 since they are yet to comply with the Mandate.

32. And due to a shortage of competent, trained teachers and staff, it is paramount that this Court enjoin Defendants from replacing these vital teachers and staff from being removed from their employment (even for a brief period of time) unless and until the Defendants can warrant and ensure that duly certified, trained and licensed substitutes teachers and staff are ready to serve Plaintiffs and deliver IEP compliant educational services to Plaintiffs.

**WHEREFORE**, for all the foregoing reasons, Plaintiffs demand judgment as follows:

a. That the Court, upon motion, grant Plaintiffs a hearing as soon as possible so that this Court may issue a preliminary injunction, declaratory relief, and/or a permanent injunction against Defendants enjoining them from implementing the Mandate and/or removing unvaccinated, teachers, staff and school safety agents assigned to Plaintiffs' District 75 program without first ensuring the availability of IEP compliant, duly qualified, trained and license teachers/staff to take their place.

b. Costs and disbursements in prosecuting this action, including reasonable attorney's fees; and,

c. Such other further relief that this Court may deem just and equitable.

Dated: September 29, 2021
       Brooklyn, NY

Yours, etc.

**TURTURRO LAW, P.C.**
By: /s/ Natraj S. Bhushan, Esq.
By: /s/Matthew J. Turturro, Esq.
By: /s/ Paulina Bellantonio, Esq.
1602 McDonald Avenue
Brooklyn, NY 11230
Tel.: 718-384-2323
*Attorneys for Plaintiffs*

**To: Defendant New York City Department of Education**
Tweed Courthouse
52 Chambers Street
New York, NY 10007

**To: Defendant The City Of New York**
100 Church Street
New York, NY 10007

**To: Defendant Mayor Bill de Blasio**
City Hall
New York, NY 10007

## VERIFICATION

STATE OF NEW YORK  )
                   )ss.:
COUNTY OF KINGS    )

NATRAJ S. BHUSHAN, being duly sworn, deposes and says:

I am an attorney with the firm Turturro Law, P.C., *pro bono* attorneys for the Plaintiffs in the within action. I have read the annexed Class Action Complaint and know the contents thereof and the same is true to my own knowledge, except as to those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.

The grounds of my belief as to all matters not stated upon my own knowledge are files maintained by, and conversations with, the Plaintiffs.

I certify that to the best of my knowledge, information and belief, the presentation of the paper is not frivolous and that the matter was not obtained through illegal conduct.

The reason I make this affirmation instead of the plaintiff is that the plaintiffs do not reside or maintain a place of business in Kings County, New York, where our firm maintains its offices for the practice of law.

/s/ Natraj S. Bhushan, Esq.
NATRAJ S. BHUSHAN