UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Christopher Litrell in his official capacity as the President of the P25R Parent Teacher Association; J.T., a minor, by and through his parent and natural guardian A.T.; R.L., a minor by and through his parent and natural guardian C.L.; S.B., a minor, by and through her parent and natural guardian, R.B.; J.M., a minor, by and through his parent and natural guardian, J.M., each on behalf of themselves and a class of those similarly situated,

                              Plaintiffs,

-against-

                              Docket No.: 21-CV-5457

New York City Department of Education, City of New York, and Bill De Blasio, in his capacity as Mayor of the City of New York,

                              Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' ORDER TO SHOW CAUSE REQUESTING A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.**

Dated: Brooklyn, New York
       October 1, 2021

**TURTURRO LAW, P.C.**
By: /s/ Natraj S. Bhushan, Esq.
By: /s/ Matthew J. Turturro, Esq.
By: /s/ Paulina Bellantonio, Esq.

1602 McDonald Avenue
Brooklyn, NY 11230
Tel.: 718-384-2323
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................................i

**TABLE OF AUTHORITIES** ..........................................................................................ii

**STATUTES & OTHER AUTHORITIES**.....................................................................iii

**PRELIMINARY STATEMENT** ....................................................................................1

**INTRODUCTION**...........................................................................................................1

**STATEMENT OF FACTS**.............................................................................................1

**ARGUMENT**...................................................................................................................2

I. PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER STANDARD...................................................................................................................2

II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM AGAINST THE DEFENDANTS ..................................................................................2

III. THE BALANCE OF HARDSHIPS WEIGHS HEAVILY IN THE PLAINTIFFS' FAVOR ...........................................................................................................................3

IV. THE PUBLIC INTEREST STRONGLY FAVORS ENJOINING THE PLAINTIFFS. 5

**CONCLUSION** ................................................................................................................6

# TABLE OF AUTHORITIES

**CASES**                                                                                                   **PAGE (S)**

*Northeast Cent. School Dist. v. Thomas Sobol, as Commissioner of Education, et al.*,
79 N.Y.2d 598, 603 (1992)……………………………………………………………….,,…..1

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
784 F.3d 887, 894-95 (2d Cir. 2015)……………………………………………..………2

*Echo Design Grp. v. Zino Davidoff S.A.*,
283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003).…………………………………..………2

*Matter of P.S. v. Pleasantville Union Free Sch. Dist.*,
168 A.D.3d 853, 854 (2nd Dep't, 2019)……………………………………..……4

*Fry v. Napoleon Community Schools*,
137 S. Ct. 743, 749 (2017)……………………………………………………………..4

# STATUTES & OTHER AUTHORITIES

**STATUTES**                                                                 **PAGE (S)**

20 U.S.C. §1400 [d][1][A]………………………………………………………………..4
20 U.S.C. §1401[9][D]……………………………………………………………………4

Plaintiffs respectfully submits this memorandum of law in support of their Order to Show Cause for a Temporary Restraining Order ("TRO"). For all the reasons set forth below this motion should be granted.

## PRELIMINARY STATEMENT

This action was commenced by the guardians/parents of the minor Plaintiffs who are students in District 75 of the New York City Department of Education ("DOE"). District 75 is the city-wide district for special education students who require IEPs and related services – i.e. physical, occupational and speech therapy, and other services. The student population of District 75 is made up of children with a wide range of disabilities and developmental disorders, making them the most vulnerable population for whose education the DOE is responsible.

As set forth in their Verified Complaint, Plaintiffs (and those similarly situated) are in immediate need of an injunction to prevent Defendants from breaching Individualized Education Program ("IEP")[1] and replacing their certified, trained and licensed teachers and staff with substitutes who do not have such qualifications – all of which will undoubtedly cause these children "irreparable harm."

## STATEMENT OF FACTS

For a complete background on the factual allegations and claims underlying the Plaintiffs' arguments, the Court is respectfully directed to the Plaintiffs' Verified Complaint ("Comp.")[2], and the Declaration of Natraj S. Bhushan ("Bhushan Aff."), affirmed on October 1, 2021 (along with the Exhibits annexed thereto).

---

[1] "An IEP is developed jointly by a school official, the child's teacher and parents… It details the special needs of a disabled child and the services which are to be provided to serve the individual needs of that child." *Northeast Cent. School Dist. v. Thomas Sobol, as Commissioner of Education, et al.,* 79 N.Y.2d 598, 603 (1992).

[2] The operative Complaint was duly verified and is annexed hereto as **Exhibit 1** to the Bhushan Aff.

**ARGUMENT**

*I.   STANDARD TO OBTAIN A PRELIMINARY INJUNCTION AND TRO*

To obtain a preliminary injunction, the moving party must show (1) "a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010)). The temporary restraining order standard is the same. *See, e.g.*, *Echo Design Grp. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003).

*II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS*

The clock is ticking! As averred in their Verified Complaint, with an estimated 40% of Plaintiffs' school (P25R) staff still unvaccinated, were the Defendants' COVID-19 Vaccine Mandate to be strictly enforced against these professionals, then it is more likely than not that Plaintiffs' teachers, staff, therapists and safety agents will be immediately replaced by substitutes; and, unless these substitutes are trained in instructing/dealing with special needs children and can meet the educational and therapy needs set forth in the minor Plaintiffs' IEPs, then the Defendants would be in material breach of said IEPs.[3] In this regard, it must be noted that IEPs are the functional equivalent of contracts between

---
[3] A sample IEP is annexed as **Exhibit B** to the Affirmation of Natraj S. Bhushan.

the parent/guardian and the DOE and failure to follow these carefully crafted educational plans will result in irreparable harm to these children.

Moreover, if these children are placed under the supervision of teachers and staff that lack the necessary training and certification required to effectively work with children that have disabilities and IEPs (which will, upon information and belief, be the case here unless a temporary restraining order is issued), there is no doubt that Plaintiffs will be certain to regress during these pivotal years of their development.

*In short, while the parents empathize with the Defendants' policy position in requiring educators to be vaccinated in the hopes of slowing the spread of Covid-19, simply put, the Plaintiffs are entitled to receive the resources, education and therapies by duly qualified teachers and staff as promised to them in their IEPs; and nothing less can suffice without risking a regression in these very vulnerable children.*

### III. THE BALANCE OF HARDSHIPS WEIGHS HEAVILY IN PLAINTIFFS' FAVOR

As averred in the Verified Complaint, each of the Plaintiffs (and proposed class) are special needs children whose parents and caretakers have done their absolute best to care for their children and find suitable school placements for these children through the Department of Education. These are parents and caretakers who on a yearly basis develop and contract with the Department as to an IEP for their children that is best suited to their individual needs.

Moreover, as noted above, Plaintiffs (and those similarly situated) suffer from conditions such as Autism, Cerebral Palsy, behavioral disorders, and other developmental challenges. Children with these particular disorders are deeply affected by changes to

routine and structure and even defendant Department of Education (to its credit) itself has promised that during the pandemic that "more special education support will be available for students with disabilities."[4] Yet, as it stands now, the Defendants, by their swift action in strictly enforcing the Mandate contradict this stated objective and, will be in breach of the IEPs if they replace Plaintiffs' teachers/staff without replacing them with competent, suitable and duly licensed/certified special needs educators and staff.

To that end, it should be noted that the Individuals with Disabilities Education Action ("IDEA") (a federal law) was enacted to "ensure that all children with disabilities have available to them a *free appropriate public education that emphasizes special education and related services designed to meet their unique needs.*"[5] The term "free appropriate public education" has been defined by our courts "as one that is in conformity with the child's Individualized Education Program."[6]

In sum, Defendants, having detailed knowledge of Plaintiffs' respective conditions through their respective IEPs are well aware of the accommodations that must be afforded to Plaintiffs in order to address their individual disabilities and learning difficulties; and these IEPs require specialized training of teachers, staff and related service providers – a training that is not commonly held by a fully certified teacher and is even less likely to be held by the substitutes Defendants plan on using come the morning of October 4, 2021 and beyond.

---

[4] *See* page 2 of Meisha Porter's (NYC's Chancellor of Schools) letter dated September 13, 2021, which is attached as **Exhibit C** to the Declaration of Natraj Bhushan.

[5] 20 U.S.C. §1400 [d][1][A] (emphasis added).

[6] *Matter of P.S. v. Pleasantville Union Free Sch. Dist.*, 168 A.D.3d 853, 854 (2nd Dep't, 2019) (*citing* 20 U.S.C. §1401[9][D]; *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 749 (2017).

Based on the foregoing, Plaintiffs can establish that the mere act of replacing a substantial portion of the Plaintiffs' teachers and staff and replacing them with unqualified substitutes, will render Defendant non-complaint with Plaintiffs' IEP – an arguable breach of contract claim and most certainly a violation of federal law. But these violations cannot be remedied by money damages nor doe Plaintiffs seek to challenge the Mandate itself; Plaintiffs solely wish to ensure the status quo with their carefully crafted education and related therapies, which will unquestionably be disrupted causing imminent harm if a temporary restraining order is not issued.

## IV. THE PUBLIC INTEREST STRONGLY FAVORS ENJOINING THE DEFENDANTS

The public interest strongly favors enjoining the Defendants from removing the teachers and staff of District 75 (in particular, Plaintiffs' teachers) – by placing them on leave without pay or otherwise - until Defendants can ensure Plaintiffs that they can meet the IEP mandates for all children with disabilities as this particular population of children and students is inherently vulnerable and will suffer immensely from any disruption in staffing, let alone a prolonged one that will necessarily result from Defendants' strict enforcement of the mandate.

These children are disabled and thrive in the environment that has been created for them at their school. It is a delicate balance and there is an implemented routine and as much consistency as possible. Change and disruption to their routines and their school environments have proven to wreak havoc on their daily lives because they are not able to adapt as easily as a typically developing child. With their school facing as many as 40% of teachers and staff not being allowed back in the building on Monday, the changes that these children may be facing come Monday are significant.

**CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court grant the narrowly requested temporary restraining order so as to ensure that Plaintiffs (and similarly situated special needs children with IEPs) do not have their carefully crafted education and related therapies disrupted for any period of time and, upon full briefing, issue a preliminary injunction enjoining the Defendants from removing, replacing, or otherwise enforcing their COVID-19 Vaccine mandate (set to go into effect on October 1, 2021 at 5:00PM) in any manner that disrupts the special needs Plaintiffs' carefully crafted, highly specialized and legally binding Individual Education Plans.

| | |
|---|---|
| Dated: Brooklyn, New York<br>October 1, 2021 | **TURTURRO LAW, P.C.**<br>By: /s/ Natraj S. Bhushan, Esq.<br>By: /s/ Matthew J. Turturro, Esq.<br>By: /s/ Paulina Bellantonio, Esq.<br><br>1602 McDonald Avenue<br>Brooklyn, NY 11230<br>Tel.: 718-384-2323<br>*Attorneys for Plaintiffs* |